IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

GANESH VERNEKAR,

Plaintiff,

v.

LOREN K. MILLER, in his official capacity as Director, Nebraska Service Center, United States Citizenship and Immigration Services; and JOSEPH B. EDLOW, in his official capacity as Director, United States Citizenship and Immigration Services,

Defendants.

**4:26CV3105**

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants Loren K. Miller ("Miller") and Joseph B. Edlow's ("Edlow" and together, the "defendants") motion (Filing No. 7) to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). For the reasons explained below, the motion is granted.

## I. BACKGROUND

### A. The "Extraordinary-Ability" Visa

Congress created an employment-based visa for aliens with "extraordinary ability in the sciences, arts, education, business, or athletics." 8 U.S.C. § 1153(b)(1)(A)(i). The "EB-1A" or "extraordinary-ability" visa "is the most difficult type of employment visa to obtain." *Joseph v. Dir. of Tex. Serv. Ctr., USCIS*, No. 24-40249, 2025 WL 458001, at *1 (5th Cir. Feb. 11, 2025). Its demanding nature is illustrated by the petitioners who have received it. *See id.* They have included John Lennon, who submitted letters of support from prominent figures like Andy Warhol, and a professional golfer "who won the World Series of Golf, Canadian Open, ranked tenth in the PGA Tour, made $714,389 in 1991 alone, and provided extensive major media coverage of his accomplishments as well as letters of support from other celebrated golfers including Jack Nicklaus." *Id.* Major

international awards like "an Olympic Gold Medal," "the Nobel Peace Prize or the Pulitzer Prize can also qualify an individual for this visa." *Id.* (internal citations omitted).

To qualify, a petitioner must demonstrate "sustained national or international acclaim" through extensively documented "achievements recognized in the field." 8 U.S.C. § 1153(b)(1)(A)(i). The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, does not define extraordinary ability, but the relevant regulations explain "extraordinary ability" is "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2).

An alien seeking an extraordinary-ability visa must file "an I–140 visa petition for classification under section 203(b)(1)(A) of the [INA] as an alien of extraordinary ability" with the United States Citizenship and Immigration Services ("USCIS"). 8 C.F.R. § 204.5(h)(1). Along with the petition, he must submit "initial evidence" that he "has sustained national or international acclaim and that [his] achievements have been recognized in the field of expertise." *Id.* § 204.5(h)(3). This can be shown either by earning a major, internationally recognized award, such as a Nobel Prize, or alternatively by meeting at least three of the ten criteria under 8 C.F.R. § 204.5(h)(3)(i)-(x), or other comparable evidence. *See id.* § 204.5(h)(3), (4).

### B. The *Kazarian* Policy

USCIS reviews extraordinary-ability visa petitions through a two-step process (referred to as the "*Kazarian* policy"), adopted in 2010 following the Ninth Circuit's decision in *Kazarian v. USCIS*, 596 F.3d 1115, 1119-20 (9th Cir. 2010). *See also* USCIS, Policy Manual, Vol. 6, Pt. F, Ch. 2, *Extraordinary Ability*, https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2 (last visited August 27, 2026) (hereinafter the "USCIS Policy Manual"). At step one, USCIS assesses whether the petitioner has (1) won a major, internationally recognized one-time achievement; or, alternatively, (2) met three of the enumerated criteria in 8 C.F.R. § 204.5(h)(3)(i)–(x). *See id.* If the petitioner passes step

one, USCIS then conducts a final-merits determination to decide whether the totality of the evidence demonstrates the "level of expertise required" (the "final-merits determination" or "step two" of the *Kazarian* policy). *Id.* The evaluating officer considers whether the petitioner "has sustained national or international acclaim," and whether their "achievements have been recognized in the field of expertise," indicating that they are "one of that small percentage who have risen to the very top of the field of endeavor." *Id.*; *see also Etsy, Inc. v. Jaddou*, No. 4:22CV3022, 2023 WL 3689555, at *3 (D. Neb. May 25, 2023) (explaining that USCIS adopted the two-part process to simplify "the adjudicative process by eliminating piecemeal consideration of extraordinary ability" by "shifting the analysis of overall extraordinary ability to the end of the adjudicative process").

### C. USCIS Denies Vernekar's Extraordinary-Ability Visa Petition

Plaintiff Ganesh Vernekar ("Vernekar") filed an I–140 EB-1A Petition for Alien Worker (the "petition"), which sought to classify him as an alien of "extraordinary ability," with USCIS. Despite satisfying three of the criteria under 8 C.F.R. § 204.5(h)(3), USCIS denied his petition. At step-two, USCIS found Vernekar did not demonstrate "sustained national or international acclaim" nor that he is among the "small percentage at the very top of the field of endeavor." *See Kazarian*, 596 F.3d at 1119-20; USCIS Policy Manual.

Vernekar filed suit on March 30, 2026 (Filing No. 1). Defendants are both federal officials tasked with evaluating visa applications. Edlow heads USCIS and Miller directs the Nebraska Service Center, the USCIS field office which processed Vernekar's petition.

Vernekar argues the *Kazarian* policy violates 8 U.S.C. § 1153(b)(1)(A) by "adding language" to the statute which "fundamentally alter[s] the requirements" for an extraordinary-ability visa. He claims this is an "impermissible abrogation of Congressional authority" under both the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). *See also* 5 U.S.C. § 706(2) (requiring reviewing courts to "hold unlawful and set aside agency action" which is in excess of statutory authority). He also seeks declaratory judgment that the *Kazarian*

policy is procedurally unlawful because it is a "substantive, legislative rule change" that did not go through the required notice-and-comment rulemaking. *See* 5 U.S.C. § 553(b). Finally, Vernekar alleges that the decision to apply the *Kazarian* policy to his case was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A).

## II. DISCUSSION

### A. Standard of Review

When reviewing a motion to dismiss for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint," and may only dismiss a claim that lacks "well-pleaded factual allegations" or fails to state a "plausible claim for relief." *Iqbal*, 556 U.S. at 678. A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The facts alleged must demonstrate "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

"Determining whether [Vernekar's] complaint states a plausible claim for relief" is a "context-specific task," requiring the Court to rely "on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 5540 U.S. at 556). Flatly pleading that the defendants acted unlawfully will be insufficient. *See id.* Rule 8's notice-pleading standard is generous, "but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

### B. Vernekar's Challenges to the *Kazarian* Policy

#### 1. Step Two is Consistent with the Governing Statute and Regulations

Vernekar takes issue with step two. In his view, the final-merits determination's requirement that he possess a "high level of expertise" in his field "is not found in statute or regulation." He argues the INA and its implementing regulations only allow for a one-

step test. As he sees it, he only needs to show a major, international award or meet three of the ten criteria under 8 C.F.R. § 204.5(h)(3).

Vernekar also points out that in the wake of *Loper Bright*, 603 U.S. at 394, agency interpretations of statutes are not entitled to deference. Before *Loper Bright*, the Court would have "defer[red] to the agency's interpretation if it "[wa]s based on a permissible construction of the statute.'" *Id.* at 379-80 (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). But since *Loper Bright*, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Iowa v. Wright*, 154 F.4th 918, 942 (8th Cir. 2025) (quoting *Loper Bright*, 603 U.S. at 412)).

To determine whether USCIS's interpretation is correct, the Court begins "with the statute's plain language, giving words the meaning that proper grammar and usage would assign them," *Union Pac. R.R. v. Surface Transp. Bd.*, 113 F.4th 823, 833 (8th Cir. 2024), and applies "the traditional tools of statutory construction," *Loper Bright*, 603 U.S. at 403. Here, these tools of statutory construction confirm that USCIS's adoption of the *Kazarian* policy is not an "illegal" or "improper" interpretation of 8 U.S.C. § 1153(b)(1)(A) as Vernekar alleges.

To start, the final-merits determination is perfectly consistent with the governing statute. Section 1153(b)(1)(A) specifically describes aliens with "extraordinary ability" as those who have both "sustained national or international acclaim" *and* "whose achievements have been recognized through the field through extensive documentation." Section 1153(b)(1)(A) does not just ask the petitioner to submit "extensive documentation"; it requires "sustained national or international acclaim." *See also Amin v. Mayorkas*, 24 F.4th 383, 392 (5th Cir. 2022) ("[T]he final merits determination speaks to

the statute's requirement of 'extraordinary ability which has been demonstrated by sustained national or international acclaim.'" (quoting 8 U.S.C. § 1153(b)(1)(A)).[1]

And the accompanying regulation promulgated by USCIS defines extraordinary ability as "a level of expertise indicating that the [petitioner] is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). The *Kazarian* policy directly mirrors that language. Asking evaluators to consider whether the petitioner has risen to the very top of their field of endeavor is not at odds with the regulation. *See* 8 C.F.R. § 204.5(h). What's more, the regulation's word choice of "initial evidence" "contemplates another step beyond submitting the enumerated evidence: if satisfying three criteria were enough, why would the agency invite proof of more?" *Amin*, 24 F.4th at 391. In sum, the Court finds ample statutory and regulatory authority for USCIS's final-merits determination. *See Joseph*, 2025 WL 458001, at *1 n.2 (noting that defining "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor" "is consistent with the best meaning of the statute" (citing *Loper Bright*, 603 U.S. at 400)).

### 2. The *Kazarian* Policy Did Not Require Notice and Comment[2]

Vernekar next contends the *Kazarian* policy is a legislative rule that required notice-and-comment rulemaking for USCIS to adopt it. The defendants counter that as an

[1]Vernekar faults the defendants for relying on cases like *Amin* which were decided before *Loper Bright*. But Vernekar ignores that many of these cases—including *Amin*—were not *Chevron* cases. The *Amin* court explicitly states it "need not decide" whether USCIS's adoption of the *Kazarian* policy is entitled to deference because the court independently concluded that "the agency's approach is consistent with the statute and regulation." 24 F.4th at 392 n.6. The *Amin* court exercised its independent judgment. *See id. Loper Bright* does not prevent the Court from considering pre-*Loper Bright* cases for their persuasive value.

[2]Because the Court finds the policy is not subject to notice and comment, it does not address the defendants' alternative argument that Vernekar's procedural challenge to USCIS's implementation of the policy is barred by the six-year statute of limitations under 28 U.S.C. § 2401(a).

interpretive rule, the *Kazarian* policy did not need to go through a notice-and-comment period. The Court agrees with the defendants.

Section 553 of the APA creates a three-step process for notice-and-comment rulemaking. The agency must first publish a notice of proposed rulemaking in the Federal Register, then invite comments from the public on the proposed rule and respond to them, and finally publish the final rule. *Id.* "Rules issued through the notice-and-comment process are often referred to as 'legislative rules' because they have the 'force and effect of law.'" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302-03 (1979)).

However, "[n]ot all 'rules' must be issued through the notice-and-comment process. *Id.* The APA exempts "interpretative rules,[3] general statements of policy, or rules of agency organization, procedure, or practice" from the notice-and-comment requirements. *Id.* (quoting 5 U.S.C. § 553(b)(A)). The question boils down to whether the *Kazarian* policy is a legislative or interpretive rule.

If an agency action tells regulated parties what they must or must not do—and the agency can hit them with an "enforcement action for violations of those obligations or requirements"—that's "a legislative rule." *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014). Conversely, if all the agency is doing is explaining what a statute or regulation already means "and does not itself purport to impose new obligations or prohibitions or requirements on regulated parties, it is an interpretive rule." *Id.*; *see Am. Min. Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1109 (D.C. Cir. 1993) (explaining that interpretive rules "advise the public of the agency's construction of the statutes and rules which it administers").

[3]Courts use the terms "interpretative rule" or "interpretive rule" interchangeably. *See*, *e.g.*, *Perez*, 575 U.S. at 96. The former appears in the APA, but the latter is the more common phrasing today. *See id.* at 96 n.1.

"The hallmark of an interpretative rule or policy statement is that they cannot be independently legally enforced." *Iowa League of Cities v. EPA*, 711 F.3d 844, 874 (8th Cir. 2013). Legislative rules "drive compliance." *Id.* "[T]hus when an agency applies a newly announced interpretative rule or policy statement, there must be some external legal basis supporting its implementation"—a statute or a properly promulgated legislative rule. *Id.* In the seminal case *American Mining Congress*, the Mine Safety and Health Administration ("MSHA") issued legislative rules that required mine operators to report "each . . . occupational illness" that occurs at a mine. 995 F.2d at 1107 (quoting 30 C.F.R. § 50.20(a)). MSHA then issued program policy letters which defined criteria for what qualified as a diagnosis for "black lung disease"—a reportable occupational illness. *Id.* at 1108. Although the MSHA's letters defined what qualified as black lung disease and triggered the reporting duty, the D.C. Circuit concluded that the rule was interpretive. *Id.* at 1112. Likewise, here, USCIS's two-step approach merely interprets what qualifies as "extraordinary ability."

As explained above, the *Kazarian* policy is consistent with both the governing statute, 8 U.S.C. § 1153(b)(1)(A), and accompanying regulation, 8 C.F.R. § 204.5(h). There is a clear "external legal basis supporting its implementation." *Iowa League of Cities*, 711 F.2d at 874. Vernekar has not plausibly alleged that the *Kazarian* policy "impose[s] new obligations" not found in the governing statute or regulations. *McCarthy*, 758 F.3d at 251. For those reasons, the Court has no difficulty joining the long-line of cases concluding that the *Kazarian* policy is "not a legislative rule subject to the notice-and-comment requirement" because it "does not create legal rights or obligations." *See Amin*, 24 F.4th at 392; *see also Branski v. Dir. of Tex. Serv. Ctr.*, USCIS, No. 25-CV-1695, 2026 WL 2427439, at *10 (E.D. Wis. Aug. 19, 2026); *Taneja v. Miller*, No. 24-CV-05657 (RER), 2026 WL 1734266, at *7 (E.D.N.Y. June 16, 2026); *Nagaiah v. Allen*, 784 F. Supp. 3d 798, 817 (E.D. Pa. 2025); *Impossible Foods Inc. v. Jaddou*, No. 23-CV-02720-DMR, 2024 WL 235187, at *5 (N.D. Cal. Jan. 22, 2024); *Etsy, Inc.*, 2023 WL 3689555, at *20-

23; *Viswanadha v. Mayorkas*, 660 F. Supp. 3d 759, 770-75 (N.D. Ind. Mar. 8, 2023); *Biyani v. USCIS*, No. 4:22CV3032, 2022 WL 17326211, at *5-7 (D. Neb. Nov. 29, 2022).

Vernekar relies exclusively on the recent decision in *Mukherji v. Miller*, ___ F. Supp. 3d ___, ___, 2026 WL 895708, at *6-7 (D. Neb. Jan. 28, 2026). Another judge in this district found *Kazarian* policy constituted a legislative rule adopted without notice-and-comment rulemaking. Respectfully, the Court does not find that case's reasoning persuasive. First, the *Mukherji* court relied on a 1995 notice of proposed rulemaking ("NPRM") which proposed a two-step adjudicative process for extraordinary-ability visas. The judge in that case observed that the Office of Personnel Management's docket showed that the 1995 NPRM was classified as a substantive rule. Based on that NPRM classification, he concluded the two-step process was a legislative rule. *Id.* But the two-step process was just one proposal—among several others—contained in that NPRM. *See* 60 F.R. 29771. The *Mukherji* court deferred to the agency's initial determination that the 1995 NPRM was substantive without considering whether the determination rested on one of the NPRM's many other provisions, nor did it independently assess whether the *Kazarian* policy more closely resembles a legislative or interpretive rule.

Mining legislative history for support, the *Mukherji* court also relied on the House Conference Report on the 1990 amendments to the INA and noted the report "says absolutely nothing about a requirement that persons seeking priority worker extraordinary ability classification need to be part of 'that small percentage of individuals who have risen to the very top of their field' or some other formulation to that effect." *Mukherji*, 2026 WL 895708, at *6 (citing H.R. REP. NO. 101-955 (2d. Sess. 1990) (Conf. Rep.), *reprinted in* 1990 U.S.C.C.A.N. 6784, 1990 WL 201613). This Court takes a different view of the legislative history. *See Garcia v. United States*, 469 U.S. 70, 76 (1984) (explaining that "[i]n surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill"). The House Judiciary Committee Report clearly states Congress's intent that the extraordinary-ability

visa "be reserved for that small percentage of individuals who have risen to the very top of their field of endeavor." H. COMM. ON THE JUDICIARY, FAMILY UNITY AND EMPLOYMENT OPPORTUNITY IMMIGRATION ACT OF 1990, H. REP. NO. 101-723(I), at 59 (2d. Sess. 1990), *reprinted in* 1990 U.S.C.C.A.N. 6710, 6739, 1990 WL 200418 at *6739. The legislative history plainly includes the "small percentage" formulation. *See id.*

### C. Applying Step Two to Vernekar's Petition Was Not Arbitrary and Capricious

Finally, Vernekar alleges that USCIS's "decision to apply" step-two of its *Kazarian* policy to his petition was unlawful because it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. §706(2)(A).

The APA allows for judicial review of a final agency action. 5 U.S.C. § 704. A court may set aside that action if it finds the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). If USCIS "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," then the decision is arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).

Vernekar does not allege any specific mistakes or deficiencies with USCIS's adjudication of his petition. As with his other counts, he again attacks the overarching *Kazarian* policy as unlawful. The thrust of Vernekar's argument appears to be that because he has met at least three criteria in step one, USCIS acted unlawfully in denying his visa application under step two. But if that were true, there would be no step two of the analysis. This effectively collapses Vernekar's arbitrary and capricious argument into his previous arguments that there should be no step two. He has not plausibly alleged that USCIS

"relied on factors which Congress has not intended it to consider" in deciding to apply the *Kazarian* policy to his petition. *Id.*

"Arguing that the agency was compelled to find extraordinary ability" because Vernekar supplied sufficient initial evidence "is a bit like saying that the only possible grade on an exam was an A+." *Joseph*, 2025 WL 458001, at *4 (quoting *Amin*, 24 F.4th at 394-95). "Extraordinary ability is such an elite level of accomplishment that recognizing it necessarily entails a judgment call." *Id.* Vernekar has not plausibly alleged that it was "arbitrary, capricious, an abuse of discretion," or unlawful, 5 U.S.C. §706(2)(A), for USCIS to make that call by considering the totality of the evidence in accordance with its long-held policy that is consistent with the governing statute and regulations.

Accordingly,

IT IS ORDERED:

1. Defendants Loren K. Miller and Joseph B. Edlow's motion to dismiss for failure to state a claim (Filing No. 7) is granted.
2. Plaintiff Ganesh Vernekar's complaint (Filing No. 1) is dismissed with prejudice.
3. A separate judgment will issue.

Dated this 8th day of September 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge